UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WEDEL,<br><br>Petitioner,<br><br>v.<br><br>D.L. RUNNELS,<br><br>Respondent. | 1:06-CV-01281 JMD HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT<br><br>ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY<br><br>ORDER DIRECTING CLERK OF COURT TO SUBSTITUTE RESPONDENT |

Petitioner Christopher Wedel ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at High Desert State Prison in Susanville, pursuant to a judgement of the Fresno County Superior Court. (Pet. at 1). Petitioner was convicted by a jury in December 2003 of second degree murder (Cal. Penal Code § 187(a)). (Answer at 2). Petitioner was sentenced to a term of fifteen years-to-life. (Pet at 1; Answer at 2).

Petitioner appealed his conviction to the California Court of Appeal on June 3, 2004. (Lod. Doc. 2). The state appellate court affirmed Petitioner's conviction in a reasoned opinion on May 3, 2005. (Lod. Doc. 4). Petitioner subsequently filed a petition for rehearing, which was denied.

(Answer at 2).

Petitioner filed a petition for review to the California Supreme Court. (*See* Lod. Doc. 5). The California Supreme Court summarily denied the petition on August 10, 2005. (Pet. Ex. A).

On September 18, 2006, Petitioner filed the instant federal petition for writ of habeas corpus with the Court. (Pet. at 1). The petition sets forth a sole ground for habeas corpus relief, contending that the trial court's failure to issue jury instructions for involuntary manslaughter violated Petitioner's right to due process of the law.

On August 1, 2007, Respondent filed an answer to the petition.

Consent to Magistrate Judge Jurisdiction

On October 19, 2006, Petitioner consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a magistrate judge conduct all further proceedings, including entry of the final judgment. (Doc. # 4). On May 31, 2007, Respondent also consented to the jurisdiction of a magistrate judge. (Doc. #13).

On January 28, 2009, the case was reassigned to the undersigned.

## FACTUAL BACKGROUND[1]

> "On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ( People v. Ochoa (1993) 6 Cal.4th 1199, 1206.) Viewed from this perspective, the facts are as follows. In November of 1992 Steve Lopez and his brother Joe Lopez lived in a house on East Joyce Drive in Fresno in a neighborhood known as the Mayfair District. At that time Steve Lopez owed a debt of about $800 to appellant Wedel. On the night of Saturday, November 23, 2002, the Lopez brothers were at home. Several guests were also present. These included 14-year-old Shana Gilio, a young girl who was friendly with Steve Lopez and who had been seen on previous occasions at the Lopez house. Also there was 17-year-old Canela Perez, who was friendly with Joe Lopez. Joseph Navarro, who lived nearby with his girlfriend Eileen Herrera and who described himself as a former stepson of Joe Lopez, was also there. Roscoe Lee, an older man, was also visiting. At least some of those present, including Steven Lopez and Roscoe Lee, were drinking beer and doing drugs.
>
> At about 11:00 p.m. the doorbell rang. Joe Lopez opened the front door and saw a man he later identified as appellant Upchurch. On November 23, 2002, however, Joe Lopez had never seen Upchurch before. Joe Lopez testified that "I never seen him before, so I just closed the door." Joe Lopez later identified Upchurch from a photographic lineup, and then again at trial, as the man he saw at the front door. Joseph Navarro had been taking a shower at the house, and then saw Shana Gilio talking to somebody at the front door. Joseph Navarro testified that he heard Shana "telling somebody that Steve and Joe weren't home." Navarro went to the front door

[1] The facts are derived from the factual summary set forth by the California Court of Appeal, Fifth District, in its unpublished opinion issued on May 3, 2005, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).

and saw the two men Gilio had been talking to. Navarro later identified one of these men from a photographic lineup. It was appellant Wedel. Wedel was the shorter of the two men Navarro saw at the door. Navarro also identified Wedel at trial as one of the two men he saw at the door. Navarro did not get a good look at the taller man because the taller man was off to the side of Wedel, who was right in the middle of the doorway. Navarro saw only the taller man's right side. Wedel asked Navarro if Steve and Joe were there. Navarro said no. Wedel asked Navarro what Navarro had behind his back. Navarro had no weapon of any kind in his hand. Neither did Shana Gilio. Navarro "showed them" (apparently referring to his empty hands). The taller man then said "[f]uck you," pulled out a shotgun, and "pump[ed] the shot in the chamber" of the gun. Navarro testified that "when I see him pump the shot in the chamber, I slammed the door."

As Navarro slammed the door, a bullet came through the door. A second shot came through the window next to the front door. One or two more shots may also have been fired. Gilio was struck and killed by two of the shotgun blast. A pathologist testified that Gilio had amphetamines and methamphetamine in her blood and in her stomach at the time of her death.

About an hour after the shooting, Wedel called Eileen Herrera, a young woman who sometimes babysat Wedel's young child. Herrera was 20 years old at the time of trial. Wedel told Herrera "some stuff went down at Steve's house." Wedel told Herrera that he had been at Steve's house and that "I just wanted to scare him." Wedel also asked Herrera not to "rat me out." Wedel also told Herrera "[n]obody was supposed to get hurt." Herrera gave the details of this conversation to Detective Leo Lopez on November 26, 2002 in a tape-recorded interview.

The prosecution contended that Gilio's killing was a felony murder in that it was committed in the course of the crime of shooting at an inhabited dwelling. Wedel presented no evidence in his defense. His attorney conceded that Wedel was at the scene of the killing. His unsuccessful defense appears to have been that Wedel might not have known that shots would be fired. No witness so testified, however.

(Lod. Doc. 4 at 2-4).

## DISCUSSION

### I. Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution and Petitioner's custody arose from a conviction in the Fresno County Superior Court. Fresno County is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or in the district where Petitioner was sentenced, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

### II. ADEPA Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2006 and is consequently governed by the provisions of the AEDPA, which became effective upon its enactment on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

As Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a state court judgment even where the petitioner is not challenging his underlying state court conviction). Under AEDPA, a petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

(quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

**III. Review of Petitioner's Claim**

In his sole ground for relief, Petitioner contends that the trial court's failure to *sua sponte* instruct the jury on a lesser included offense violated his right to due process of the law. (Pet. at 4). Petitioner argues that the trial court should have instructed the jury on involuntary manslaughter. This allegation is premised upon the jury verdict having been obtained on a felony murder theory–one of two theories presented by the prosecutor. (Pet. Mem. P. & A. at 1). Petitioner argues that the facts of his case warranted an instruction on involuntary manslaughter, on a misdemeanor manslaughter theory, stemming from the misdemeanor of brandishing a weapon. (Id. at 2-3).

This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District. The state appellate court issued a reasoned decision affirming Petitioner's conviction. (*See*

Lod. Doc. 4). Petitioner's subsequent petition for review before the California Supreme Court was summarily denied. (*See* Pet. Ex. A). When reviewing a state court's summary denial, the Court "look[s] through" the summary disposition to the last reasoned decision. *See* Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have adjudicated this claim for the same reasons cited by the California Court of Appeal in their reasoned denial of Petitioner's claim. *See* Ylst v. Nunnemaker, 501 U.S. at 803.

As an initial matter, the Court notes that in a non-capital case, such as the one presented here, the "f[]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) (quoting James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) (*per curiam*)). While the United States Supreme Court, in *Beck v. Alabama*, 447 U.S. 625, 638 (1980), has held that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital murder case, the *Beck* court also expressly reserved the question of whether due process mandates the application of the same right to non-capital cases. *See* Beck,447 U.S. at 638, n.7; Solis v. Garcia, 219 F.3d 922, 928 (9th Cir. 2000). Thus, the right to have a jury instructed on a lesser included offense is not clearly established federal law in a noncapital case and consequently, the failure of a trial court to *sua sponte* instruct on a lesser included offenses does not warrant habeas corpus relief. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998); Turner v. Marshall, 63 F.3d 807, 813 (9th Cir.1995), *overruled on other grounds* by Tolbert v Page, 182 F.3d 677 (9th Cir.1999) (*en banc*) (finding the application of Beck to noncapital cases barred by Teague v. Lane, 498 U.S. 288, 299-300 (1989)); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) (*per curiam*).

The Ninth Circuit in *Solis* noted that there might exist an exception to this general rule for adequate jury instructions on a defendant's theory of defense. Solis, 219 F.3d at 929 (citing Bashor, 730 F.2d at 1240, but noting that Wyndham, 163 F.3d at 1106, mentioned no such exception to the general rule). Assuming *arguendo* that Petitioner possesses a federal constitutional right to receive adequate instructions on his theory of the case, the state appellate court's conclusion that the

evidence did not warrant such an instruction was not objectively unreasonable.  *See* Solis, 219 F.3d at 929 (finding habeas petitioner not entitled to relief even under the exception where evidence to support lesser included offenses was not substantial).  The appellate court noted that involuntary manslaughter instructions are permitted in cases involving "the killing of a human being without malice in the commission of an unlawful act not amounting to a felony."  (Lod. Doc. 4 at 5, citing to Cal. Penal Code § 417(a)(2)).  However, as the appellate court further stated, the killing of the victim did not occur in the commission of brandishing a weapon,  as distinguished from *People v. Lee*, 20 Cal.4th 47, 53 (Cal. 1999), wherein a criminal defendant was entitled to a jury instruction regarding involuntary manslaughter resulting from a shoving a match.  Here, as the appellate court noted, the victim was killed as a result of Petitioner and/or Upchurch shooting at the dwelling.  It did not result from merely brandishing the weapon.  Rather, the killing of the victim resulted from the firing of the weapon at the dwelling, thus warranting an instruction on felony murder but not on involuntary manslaughter.  Even if Petitioner had a constitutional right to an instruction on involuntary manslaughter, the state court opinion rejecting this claim was not objectively unreasonable.  Consequently, Petitioner has failed to established that the evidence presented at trial warranted such an instruction on involuntary manslaughter.

**IV.    Proper Respondent**

Petitioner is current incarcerated at High Desert State Prison.  Respondent states that the warden of this particular institution is Tom Felker. (Answer at 1, n. 1).  Pursuant to Rule 25 of the Federal Rules of Civil Procedure, the Clerk will be directed to substitute Tom Felker as Respondent in this matter.

**V.    Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to substitute Tom Felker as Respondent in this matter;

3. The Clerk of Court is DIRECTED to enter judgment; and

4. The Court DECLINES to issue a certificate of appealability.

**IT IS SO ORDERED.**

**Dated: January 30, 2009** **/s/ John M. Dixon**
**UNITED STATES MAGISTRATE JUDGE**